THE STATE v. GIANO BATTISTA BIANGO.

Argued June 5, 1907—Decided November 11, 1907.

1.  A homicide resulting from a breach of the peace committed by the use of a deadly weapon in heat and passion, without premeditation, but also without justifiable provocation, is murder in the second degree under our statute. An instruction to the jury in such a case that the homicide was not manslaughter is correct.
2.  Improper statements by a prosecuting attorney in his summing up, with respect to which judicial action was not invoked at the trial, afford no grounds for the reversal of a criminal judgment, brought up under the one hundred and thirty-sixth section of the Criminal Procedure act, where the record returned fails to show either what statements were in fact made or that such statements as were made were productive of manifest wrong and injury to the plaintiff in error.
3.  The sense of impending death, which is the foundation for the introduction of a dying declaration, may be evidenced by the express statement of the declarant to that effect, if made by him part of his declaration. The admissibility and probative effect of such a statement derives no added force from the doctrines peculiar to dying declarations, but, on the other hand, such statement, if proved to have been made by the deceased, is not vitiated by being written down as part of the documentary evidence by which his dying declaration would also be proved.

On error to the Hudson Oyer.

Before Justices GARRISON and SWAYZE.

For the plaintiff in error, *Alexander Simpson.*

For the state, *William H. Speer,* prosecutor of the pleas.

The opinion of the court was delivered by

GARRISON, J.   This writ brings up a conviction of murder in the second degree. There are no bills of exception, but the entire record has been returned under sections 136 and 137 of the Criminal Procedure act. The causes for reversal specified and argued by counsel in his brief are, *first,* that the trial

court charged that there was no evidence that would justify the jury in considering the case as one of manslaughter.

The testimony called for this instruction. There were two versions of the homicide—the state's version and that of the plaintiff in error. The state's version was that upon the occasion of a christening at his house the plaintiff in error became incensed at the "horse-play" of one Melo, and that a physical encounter was averted only by the removal of Melo from the house, after which the plaintiff in error kicked in the groin one Albertize, who had tried to hold him; struck in the face one Visacci, who had taken hold of his wrist, and, procuring a knife from a drawer, had plunged it into Benevento, who had come up to quiet him, of which wound Benevento died. That the plaintiff in error was in heat and passion must be admitted, and also that his act lacked premeditation, but it must also be admitted that it lacked justifiable provocation, either by Benevento or by anyone else. The act of stabbing, being unlawful, was a breach of the peace, and, being without justifiable provocation, was malicious, and where an act possessing these attributes resulted in death, the homicide was murder at the common law, and is murder in the second degree under our statute.

The other version was that after Melo had been taken away the plaintiff in error was held by his wife and two others, and that while so held Benevento was stabbed by someone else in another part of the room. The court was entirely justified in telling the jury that the plaintiff in error, if guilty at all, was guilty of murder and not of manslaughter.

The *second* cause for reversal is that the prosecutor, in summing up to the jury, hinted that on the previous trial that had been referred to during the case the plaintiff in error had been found guilty. The precise language he is accused of using is: "You can draw your own conclusion as to what the verdict in that case was, because you know the state would never put a man in jeopardy twice."

It is also said that the prosecutor read to the jury some of the testimony given at the former trial. What he read is not stated. Our sole source of information as to the facts of this

incident is a statement made by counsel for plaintiff in error at the close of the summing up, in which, after using the words quoted, counsel said: "I assign that as error, because the jury has no right to draw any inference as to the former trial," and "I assign as error the reading by the counsel for the state from a book of the testimony in the former trial."

As to what was in fact read to the jury we should be entirely in the dark but for the reply statement of the prosecutor that all he had read was a question that had been put to the defendant when he was on the stand as a witness.

Nothing is presented for judicial review by the meagre narrative contained in this transcript of the trial. No judicial action was invoked. The court was not asked to stop the state's attorney during his summing up, or to charge with respect to the matters now complained of, although several requests as to other matters were preferred. There was no denial of any matter of discretion, for no request was made. Counsel has, it is true, specified as cause for the reversal the matters he then assigned as errors at the trial, but he has not brought the matters themselves before us, either in form or in substance. In fine there was no judicial action that constituted legal error, and there is no data in the record from which we can say that manifest wrong and injury have been suffered by the plaintiff in error.

The remaining specification is that the paper admitted as a dying declaration was admitted without legal proof. The documentary proof thus referred to begins with these words: "I, Emedeo Benevento, make this statement, knowing that I am about to die, and having no hope of recovery, and I tell the truth and nothing but the truth, as I expect to meet my Maker in the hereafter." The proof was that these words were uttered by Benevento in Italian to the interpreter in response to questions put in Italian by the interpreter to Benevento, and that the declarant's answers were correctly translated into English. There was, of course, other proof bearing upon the actual condition of the declarant in respect to the prospects of his recovery. Counsel's point seems to be

that the statement as to impending death, which if proved as an oral statement would be a valid foundation for the introduction of his dying declaration, is vitiated by the fact that such preliminary statement was reduced to writing, and appears as part of the document by which the dying declaration is sought to be proved. There is no force in this point. Such statements need not be in writing, and gain nothing by being reduced to that form, but, on the other hand, the reduction to writing of a statement that was oral before it was written does not impair its force or affect its competency. The sense of death, which is the foundation for the introduction of a dying declaration, may be evidenced by the express words of the deceased to such effect, if made by him part of his declaration. 21 *Cyc.* 982, and cases cited. Upon the question of its admissibility or probative effect, such statement derives no added force from its collocation or from the doctrines peculiar to dying accusations, but neither, on the other hand, is it vitiated in these respects by being written down as part of the document by which the dying declaration is sought to be proved. The preliminary question for the court is, Did the deceased make this statement touching his sense of impending death? and upon that question all pertinent proof is admissible. Finding no ground upon which the judgment of the court below should be reversed, the conviction of the plaintiff in error and his sentence to imprisonment for fifteen months in the state prison are affirmed.